Merrimack
No. 2001-027

RAYMOND E. DUPONT, ADMINISTRATOR OF THE ESTATE OF RAYMOND E. DUPONT, JR.

v.

AAVID THERMAL TECHNOLOGIES, INC. *& a.*

Argued: February 13, 2002
Opinion Issued: May 15, 2002

*McKean, Mattson & Latici, P.A.*, of Gilford (*Steven M. Latici* on the brief and orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Robert C. Dewhirst* and *Michael J. Kenison* on the brief, and *Mr. Dewhirst* orally), for the defendants.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Wilbur A. Glahn, III* on the brief) and *New England Legal Foundation*, of Boston, Massachusetts (*Michael E. Malamut* on the brief), for Business and Industry Association of New Hampshire, as *amicus curiae*.

DALIANIS, J. The plaintiff, Raymond E. Dupont, administrator of the estate of Raymond E. Dupont, Jr., appeals the orders of the Superior Court (*McGuire*, J.) denying his second motion to amend his writ of summons and granting the motion of the defendants, Aavid Thermal Products, Inc. (ATP), and its parent company, Aavid Thermal Technologies, Inc. (ATTI) to dismiss his negligence action. We affirm in part, reverse in part and remand.

The facts, as alleged in the plaintiff's first amended writ of summons and viewed in the light most favorable to him, are as follows. On January 21,

1998, Robert Hilliard shot and killed the decedent, Raymond E. Dupont, Jr., in the parking lot of ATP's Laconia facility. After shooting the decedent, Hilliard shot and killed himself.

Hilliard was a co-worker of the decedent, although he worked in a different department and on a different shift. Hilliard initially confronted the decedent at his work station. The decedent's supervisor observed Hilliard in the decedent's work area, knew that Hilliard was not scheduled to work that day and that his presence violated company policy, but did not contact company security personnel. The confrontation concerned Hilliard's belief that the decedent was having an affair with his girlfriend. At some point after the confrontation began, the decedent's supervisor elicited the help of another supervisor, and both supervisors, suspecting that the confrontation might turn violent, escorted Hilliard and the decedent out of the building and into the company parking lot. As the supervisors observed the conversation becoming more heated and Hilliard becoming more agitated, another co-worker informed them that Hilliard had a loaded handgun. After learning of this, the supervisors did not call the police, but attempted to terminate the conversation by ordering the decedent to return to work. Hilliard requested more time with the decedent, which the supervisors allowed. Hilliard then shot the decedent and soon after shot himself.

One of the decedent's co-workers knew that Hilliard was addicted to pain medication, was violent and aggressive, and had previously threatened the decedent with violence. Another co-worker, who also knew that Hilliard was abusing a pain medication, learned on the day of the shooting that he was on his way to the Laconia facility to confront the decedent and that he was armed. Neither employee reported this information to company supervisors.

The plaintiff brought a common law negligence action against the defendants, who moved to dismiss it. While the motion to dismiss was pending, the plaintiff moved for leave to amend the writ, which the court granted. The court granted the defendants' motion to dismiss on the ground that the defendants had no duty to protect the decedent from Hilliard's attack, and thus could not be liable for it as a matter of law. Following the dismissal of his first amended writ, the plaintiff filed a second motion to amend his writ. The court found that the motion was untimely because there was no longer any writ to amend, and denied it.

On appeal, the plaintiff argues that dismissal of his first amended writ was error because the employment relationship *in and of itself* gave rise to a duty to protect against foreseeable third party criminal attacks and imposed upon the defendants the duty to protect the decedent from Hilliard's attack. The plaintiff also contends that the conduct of the

decedent's supervisors imposed a duty upon the defendants to protect the decedent from Hilliard's attack. Finally, he argues that denial of his second motion to amend was error because it denied him the opportunity to cure the deficiencies the court noted in its order dismissing the first amended writ.

"We review motions to dismiss to determine if the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery." *Langlois v. Pomerleau*, 143 N.H. 456, 460 (1999) (quotation omitted). We then engage in a "threshold inquiry that tests the facts in the complaint against the applicable law." *Williams v. O'Brien*, 140 N.H. 595, 597-98 (1995). In so doing, we assume the truth of all well-pleaded facts alleged by the plaintiff, construing all inferences in the light most favorable to the plaintiff. *See Bohan v. Ritzo*, 141 N.H. 210, 213 (1996).

■ To prevail upon his negligence claims against the defendants, the plaintiff must show that: (1) they owed the decedent a duty; (2) they breached this duty; and (3) the breach proximately caused the decedent's injury. *See Hickingbotham v. Burke*, 140 N.H. 28, 34 (1995). Whether the defendants owed the decedent a duty is a question of law. *See Walls v. Oxford Management Co.*, 137 N.H. 653, 656 (1993).

■ The accepted maxim is that a private citizen has no general duty to protect others from the criminal attacks of third parties. *See id.* In certain limited circumstances, however, we have recognized such a duty. We have held that the duty to protect may arise because: (1) a special relationship exists, *see Marquay v. Eno*, 139 N.H. 708, 717 (1995) ("schools share a special relationship with students entrusted to their care, which imposes upon them certain duties of reasonable supervision"); (2) special circumstances exist, *see Iannelli v. Burger King Corp.*, 145 N.H. 190, 194 (2000) (unruly behavior of rowdy youths created unreasonable risk of injury to restaurant patrons and gave rise to duty of restaurant owner to protect patrons); or (3) the duty has been voluntarily assumed, *see Walls*, 137 N.H. at 659 (landlord who undertakes to provide security has duty to act with reasonable care with respect to protecting tenants from criminal attack).

### I. Special Relationship

We first address the plaintiff's contention that the defendants owed the decedent a duty to protect against Hilliard's attack because of the "special" nature of the employment relationship. We decline to hold that the employment relationship is the type of "special" relationship that gives

rise to a duty to protect against foreseeable criminal attacks by third parties.

This is an issue of first impression for this court. Although some courts have assumed for analytical purposes that the employment relationship is "special," *see, e.g., Ozment v. Lance*, 437 N.E.2d 930 (Ill. App. 1982), we are not aware of any decisions imposing liability upon an employer for the criminal acts of a third person based solely upon the "special" nature of an employment relationship. Indeed, at oral argument, the plaintiff conceded that no such decisions exist.

Courts in other jurisdictions have expressly *declined* to impose liability upon an employer merely because of the employment relationship. *See Parham v. Taylor*, 402 So. 2d 884, 886-87 (Ala. 1981), *overruled on other grounds by Latham Roof America, Inc. v. Hairston*, No. 1001162, 2002 WL 363662, at *6 (Ala. Mar. 8, 2002); *Thoni Oil Magic Benzol Gas Stations, Inc. v. Johnson*, 488 S.W.2d 355, 357-58 (Ky. 1972). The courts in *Parham* and *Thoni* explained as follows:

> In the ordinary situation we indulge the assumption that people will obey the law rather than violate it. Thus, absent unusual circumstances, an employer need not anticipate injury to an employee through the criminal acts of third persons. In the ordinary situation an employer has no duty to provide police protection for employees. . . . In spite of police protection afforded by the state it is a fact of life that citizens are sometimes assaulted, beaten, robbed, raped or murdered at home, at work or on the streets. This is a problem which confronts all citizens equally and for which there is often no civil remedy. . . . We feel . . . that employers should not be saddled with . . . liability [for the criminal acts of third persons] except in the most extraordinary and highly unusual circumstances.

*Parham*, 402 So. 2d at 886 (quotation omitted); *Thoni*, 488 S.W.2d at 357.

The plaintiff argues that the employer-employee relationship is similar to the school-student relationship we found "special" in *Marquay*. In *Marquay*, we followed the RESTATEMENT (SECOND) OF TORTS § 314A at 118 (1965), which delineates the types of relationships that give rise to a duty to aid or protect. Under the RESTATEMENT (SECOND) OF TORTS § 314A, these relationships are those of common carrier/passenger, innkeeper/guest, landowner/invitee and "[o]ne who is required by law to take or who voluntarily takes . . . custody of another under circumstances such as to deprive the other of his normal opportunities for protection." In *Marquay*, we held that there was a special relationship between schools

and students under this fourth category of special relation. *Marquay*, 139 N.H. at 717-18. We noted, in particular, that school attendance was compulsory and that students, therefore, could not avail themselves of the protection of their parents or guardians. *Id.* at 717. Under these circumstances, we held that the social importance of protecting children's interests outweighed the importance of immunizing schools from extended liability. *Id.*

We are unpersuaded by the plaintiff's attempts to liken the employer/employee relationship to the school/student relationship in *Marquay*. Employees are not children and employers do not play the role of parental proxy. Employment, unlike school, is not compulsory. Employees are generally free to terminate their employment relationship at any time and for any reason.

Ultimately, whether to impose upon an employer a duty to protect employees merely because of the employment relationship is a question of equity. The inquiry "rests on a judicial determination that the social importance of protecting the plaintiff's interest outweighs the importance of immunizing the defendant from extended liability." *Walls*, 137 N.H. at 657 (quotation omitted).

While we are not insensitive to the tragic circumstances in this case, we decline to adopt a rule that employers have a general duty to protect their employees from third party criminal acts. Such a rule imposes an onerous burden upon employers. Crime is unpredictable. Criminals can be devious. If we were to adopt the plaintiff's arguments, this employer – and presumably every other employer – could be required to maintain a security force, search all employees for weapons, and implement other intrusive safety procedures to address the potential for workplace violence. Such a rule could be very costly, particularly if employers were unable to obtain general liability insurance coverage for the intentional acts of third parties. In addition, some such measures may conflict with the employer's duty to comply with laws protecting, among other things, an employee's right to privacy.

In the end, we believe that the general duty to protect citizens from criminal attacks is a government function, which private sector employers should not be required to shoulder merely because of their status as employers.

Both the Alabama and Kentucky Supreme Courts have adopted a rule that liability does not attach to an employer for a third party's criminal act unless the plaintiff clearly shows that the employer "greatly and unreasonably increased [the] risk [of criminal attack] without taking reasonable precautions for the safety of the employee." *Thoni*, 488 S.W.2d at 357; *see also Parham*, 402 So. 2d at 887. The mere potential or

possibility of harm to the employee is not sufficient to impose liability. "It is only when the risk reaches the stage that injury to the employee is the likely or probable result of the condition of employment that liability attaches." *Thoni*, 488 S.W.2d at 357.

This rule is similar to the rule we adopted in *Walls* with respect to landlord liability for criminal attacks on tenants. In *Walls*, we held that while landlords have no general duty to protect tenants from criminal attacks, "such a duty may arise when a landlord has created, or is responsible for, a known defective condition on a premises that foreseeably enhanced the risk of criminal attack." *Walls*, 137 N.H. at 659.

■ We now hold that while employers have no general duty to protect employees from criminal attacks, such a duty may arise when the employer has unreasonably created a condition of employment that foreseeably enhances the risk of criminal attack. As the courts in *Parham* and *Thoni* posited, liability should not be imposed upon an employer unless the "conditions of employment are such that they invite attack upon employees by creating highly unusual and unreasonable exposure to danger without the employment of reasonable protective measures." *Parham*, 402 So. 2d at 886; *Thoni*, 488 S.W.2d at 357.

In *Thoni*, for instance, the court ruled that the employer was not liable for the shooting death of its employee, a gas station attendant who was killed by a robber while working at the employer's gas station late at night in a dangerous area of town. The court held that "as a matter of law the conditions of the employment were not so fraught with danger as to render a crime against the employee a likelihood or a probability and the issue should not have been submitted to the jury." *Thoni*, 488 S.W.2d at 358.

The Alabama Supreme Court reached a similar conclusion in *Parham*, ruling that the employer was not liable as a matter of law for injuries the employee sustained when she was robbed at gun-point while working as a clerk in the employer's liquor store. *Parham*, 402 So. 2d at 885-87.

■ In this case, the plaintiff has not alleged that the defendants created conditions of employment that were so "fraught with danger" that it was likely, or even probable, that the defendants' employees would be subject to criminal attack by third parties. As the trial court noted, "[t]he [defendants] did not create or allow to exist an environment which placed [the decedent] at risk any more than if [he] had been at home or on the street." *Compare id.* at 885-87 (employment conditions, which involved working at night in store in lighted area of main thoroughfare regularly patrolled by police, did not "greatly and unreasonably" enhance risk of attack) *with Lillie v. Thompson*, 332 U.S. 459 (1947) (employment

conditions requiring employee to work alone in isolated section of dangerous area and to admit anyone who knocked into building lacking windows and outside light foreseeably enhanced risk of criminal attack). Thus, the plaintiff has failed to allege a viable negligence claim against the defendants under this theory of liability.

## II. Supervisors' Actions

We next address the plaintiff's claim that the defendants owed the decedent a duty because of the conduct of decedent's supervisors. The plaintiff alleged that the supervisors escorted the decedent and Hilliard outside the building, even though they "suspected that the situation would turn violent." He further alleged that although both supervisors observed Hilliard becoming "increasingly agitated" and the conversation becoming "more heated," and although they were informed that he had a loaded handgun, they permitted the confrontation to continue, failed to warn decedent that Hilliard was armed, and failed to call the police. The plaintiff also alleged that the defendants "were aware of a history of workers bringing weapons into the workplace" and that there had been "past episodes of potential violence similar to the incident involving decedent." When viewed in the light most favorable to the plaintiff, we hold that these allegations are reasonably susceptible of a construction to permit recovery.

■ An employer has a duty to protect an employee who, while acting within the scope of employment, "comes into a position of imminent danger of serious harm and this is known to the [employer] or to a person who has duties of management." RESTATEMENT (SECOND) OF TORTS § 314B; see also RESTATEMENT (SECOND) OF AGENCY § 512(1) (1958). In these circumstances, the employer is subject to liability for failing "to exercise reasonable care to avert the threatened harm." RESTATEMENT (SECOND) OF AGENCY § 512(1); see also Newman v. Redstone, 237 N.E.2d 666, 669 (Mass. 1968) (holding that evidence did not establish employer's negligence when employer took reasonable measures to avoid harm to employee suffering epileptic seizure). As explained in comment a to RESTATEMENT (SECOND) OF AGENCY § 512(1):

> A[n employee] may be exposed to risk of harm from a cause for which the [employer] is not responsible under such conditions that the threatened [employee] has no power to save himself. If this becomes known to persons having duties of superintendence, the employer is subject to a duty to take such reasonable measures for relief as may be open. Thus, if a factory catches fire without the fault of the employer, and this

comes to the knowledge of the superintendent, he is subject to a duty to take reasonable measures for the escape of the employees from the threatened building.

In this case, the plaintiff alleged that the supervisors knew that Hilliard was armed and agitated, and thus they allegedly knew that the decedent was in a "position of imminent danger of serious harm." He further alleged that the supervisors failed to take reasonable measures to prevent the attack they suspected would occur. He also alleged that there was a prior history of similar incidents of potential violence in the workplace and of employees bringing weapons to work. Assuming, as we must, that these allegations are true, and construing all inferences in the light most favorable to the plaintiff, we hold that these allegations sufficiently establish that the defendants owed the decedent a duty to protect him from Hilliard's attack. Thus, we reverse the trial court's dismissal of counts one and three of the plaintiff's first amended writ and remand for further proceedings consistent with this opinion.

Our holding, like that of the trial court, is limited to whether the plaintiff sufficiently alleged that the defendants owed the decedent a duty to protect him from Hilliard's attack. Therefore, we do not address whether the plaintiff's allegations in counts one and three sufficiently allege the other elements of a negligence claim. Likewise, we do not address the defendants' arguments concerning the plaintiff's inability to prove proximate causation at trial; at this stage of the proceedings, these arguments are premature. We also express no opinion as to whether the plaintiff's claims are preempted by the exclusive remedy provisions of the Workers' Compensation Law as this issue has not been argued on appeal. *See* RSA 281-A:8 (Supp. 2001).

Moreover, while we reverse the trial court's dismissal of counts one and three of the plaintiff's first amended writ, which alleged the direct liability of the defendants, we affirm its dismissal of count two, which alleged the indirect liability of ATP under a theory of respondeat superior. "Under the doctrine of *respondeat superior*, an employer may be held vicariously responsible for the tortious acts of an employee committed incidental to or during the scope of employment." *Trahan-Laroche v. Lockheed Sanders*, 139 N.H. 483, 485 (1995). Count two of the first amended writ alleged that ATP was vicariously liable for the allegedly negligent conduct of the decedent's supervisors and co-workers in failing to protect the decedent from Hilliard's attack. This claim fails because neither the decedent's supervisors nor his co-workers had a duty to protect the decedent from Hilliard's attack. *See Walls*, 137 N.H. at 656.

"Absent a duty, there is no negligence." *Id.* Accordingly, because count two does not sufficiently allege that the individual supervisors and co-workers had any duty to protect the decedent, ATP cannot be held vicariously liable for their alleged negligence.

In light of our ruling, we do not address the parties' arguments related to the plaintiff's second amended writ.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; BROCK, C.J., and NADEAU, J., concurred; DUGGAN, J., concurred in part and dissented in part.

DUGGAN, J., concurring in part and dissenting in part. In part I, the court holds that employers have no general duty to protect employees from criminal attacks although a duty may arise when the employer has unreasonably created a condition of employment that foreseeably enhances the risk of criminal attack. This holding is consistent with the accepted maxim that a private citizen has no duty to protect others from the criminal attacks of third parties. I concur in part I.

In part II, the court holds that the plaintiff's allegations in this particular case are reasonably susceptible of a construction to permit recovery. The plaintiff alleges that there was a prior history of employees bringing weapons to work, and that after escorting Hilliard and the decedent out of the building, the employer's supervisors became aware that Hilliard was armed and failed to take reasonable measures to prevent an attack they suspected would occur. The plaintiff, further, alleges that "[the supervisors] owed a duty to [the] decedent to enforce existing personnel and safety policies and to otherwise manage and supervise [the] decedent and other employees and to not expose [the] decedent to unreasonable risk of harm in the workplace." Based on these allegations, the court holds that this employer had a duty to protect this employee because he was in a position of imminent danger of serious bodily injury, and the supervisors, acting as the employer's agents, knew of the danger and failed to exercise reasonable care to avert the threatened harm. This holding seems to place a duty upon the supervisors, as agents of the employer, to protect employees from criminal attacks by third parties.

The allegations here that the supervisors failed to take reasonable measures to prevent the attack and failed to exercise reasonable care to avert the threatened harm essentially mean that the supervisors were obligated to intervene in the incident, or to call the police, or to at least tell the decedent that the assailant was armed. Our cases and cases from other

jurisdictions, however, have consistently held that no such duty exists absent one of the three exceptions noted in the court's opinion. *See, e.g., Ahrendt v. Granite Bank*, 144 N.H. 308, 314 (1999) (holding bank had no duty to protect its customer from criminal act of third party absent a special relationship); *Walls v. Oxford Management Co.*, 137 N.H. 653, 659 (1993) (holding landlord has no duty to protect its tenant from criminal attack of third party absent known defective condition on premises that foreseeably *enhanced* risk of criminal attack, or gratuitous or contractual undertaking to provide security).

The reason for this rule and the narrowness of exceptions to the rule is that the imposition of civil liability on private citizens for their failure to warn another of imminent criminal conduct imposes an ill-defined burden on the ordinary citizen. Moreover, as in this case, the ordinary citizen is usually thrust precipitously into a highly volatile situation over which he has little control. Here, once the supervisors learned that Hilliard had a gun, they ordered the decedent to return to work. Understandably, they did not try to disarm Hilliard or tell the decedent with Hilliard standing there that Hilliard had a gun. While in hindsight a different course of action might have prevented this tragedy, to impose a duty here on the supervisors and their employer is at odds with the basic rule that, absent sufficient control that would give rise to a duty, private citizens are not civilly liable for a failure to prevent criminal behavior.

As the court concludes in part I, there is no exception to this rule simply because of the employment relationship. An employer does owe various duties to his employees including the duty to provide a safe workplace and to warn of dangers about which the employee may be ignorant, *see Wright v. St. Louis Produce Market, Inc.*, 43 S.W.3d 404, 413 (Mo. Ct. App. 2001); *see also* RESTATEMENT (SECOND) OF TORTS § 314B (1965); RESTATEMENT (SECOND) OF AGENCY § 512(1) (1958), but the scope of these duties extends only to harms reasonably foreseeable. *See Petersen v. U.S. Reduction Co.*, 641 N.E.2d 845, 849-50 (Ill. App. Ct. 1994).

Other courts have held that an employer's duty to provide a safe workplace includes protecting employees from criminal attack only "[w]hen the conditions of employment are such that they invite attack upon employees by creating highly unusual or unreasonable exposure to danger," thereby making the risk of criminal attack reasonably foreseeable. *Thoni Oil Magic Benzol Gas Stations, Inc. v. Johnson*, 488 S.W.2d 355, 357 (Ky. 1972). In this case, the plaintiff does not allege sufficient facts that would support a conclusion that the nature of the employer's business made a criminal attack of the decedent by a co-worker reasonably foreseeable.

Even assuming that the employer here had a general duty to protect employees against workplace violence, the employer's supervisors, upon learning that Hilliard had entered the workplace contrary to company policy, escorted him out of the building; and later, upon learning that Hilliard was carrying a loaded gun, ordered the decedent back to his workstation away from Hilliard. "As in other cases involving negligence, the employer is liable only if, using the facilities he has or should have, he or his executives act unreasonably." RESTATEMENT (SECOND) OF AGENCY § 512(2) comment *b* at 479. Based on the facts alleged by the plaintiff – including Hilliard's volatility and the limited control the supervisors had over the situation – the supervisors did not act unreasonably, and therefore the facts alleged are not susceptible of a construction that would permit recovery. Accordingly, I would reaffirm the law as set forth in part I and respectfully dissent from part II.