JOHN MURDOCK *v.* JOSEPH CROUGHWELL ET AL.
(SC 16987)

Sullivan, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.

Argued October 23, 2003—officially released April 27, 2004

*Michael C. Stumo*, with whom, on the brief, was *Timothy Brignole*, for the appellant (plaintiff).

*Wesley W. Horton*, with whom were *Kenneth J. Bartschi, James J. Szerejko* and, on the brief, *John B. Farley* and *Jeffrey White*, certified legal intern, for the appellees (named defendant et al.).

*Opinion*

VERTEFEUILLE, J. This appeal arises out of a negligence action brought by the plaintiff, John Murdock, a former officer for the Hartford police department, against the named defendant, Joseph Croughwell, the former chief of the Hartford police department, and the defendant city of Hartford (city), to recover damages for injuries sustained in an off-duty, physical altercation

with a fellow police officer, Antonio Cancel.[1] On appeal to this court, the plaintiff claims that the trial court improperly set aside a jury award in his favor and rendered judgment notwithstanding the verdict based upon its erroneous conclusion that Croughwell had no duty to protect the plaintiff or to control the off-duty conduct of Cancel.[2] We conclude that the trial court properly determined that Croughwell owed no duty to the plaintiff on the facts of this case. Accordingly, we affirm the judgment of the trial court.[3]

---

[1] The plaintiff named Cancel, Croughwell and the city as defendants. Following the jury verdict, the plaintiff reached a settlement with Cancel and withdrew his claims against him. Accordingly, Cancel is not a party to this appeal. We refer in this opinion to Croughwell and the city as the defendants.

[2] The plaintiff raises three other claims in his appeal to this court. First, he claims that the trial court improperly granted the defendants' motion to set aside the verdict and improperly rendered judgment notwithstanding the verdict based upon its conclusion that Croughwell was shielded from liability by governmental immunity. Second, the plaintiff claims that the trial court improperly granted the defendants' motion to set aside the verdict and improperly rendered judgment notwithstanding the verdict based upon its conclusion that a claim pursuant to General Statutes § 7-465 was without merit because Croughwell was protected by governmental immunity. Because we conclude that Croughwell did not owe a duty of care to the plaintiff, we do not address these claims. Additionally, the plaintiff claims that the trial court improperly excluded evidence of a prior altercation between Cancel and another police officer that would have established that Croughwell had constructive notice of Cancel's violent tendencies. Neither actual nor constructive notice of Cancel's violent tendencies would alter our conclusion that Croughwell owed no duty to the plaintiff on the facts of this case, and we therefore do not consider this evidentiary issue.

[3] In the event that this court would find error and reverse the trial court's judgment, the defendants raise the following claims in their brief: a new trial should be ordered because the jury failed to apportion properly the negligence between the plaintiff, Cancel and Croughwell pursuant to General Statutes § 52-572h; the defendants are entitled to a setoff in the amount equal to the plaintiff's postverdict settlement with Cancel; and the case should be remanded to the trial court for a determination as to whether the award of $890,000 in noneconomic damages was excessive as a matter of law. Because we affirm the trial court's judgment, we do not address these issues.

The jury reasonably could have found the following facts. On June 9, 1995,[4] the plaintiff and Cancel were involved in a physical altercation in the parking lot of the Howard Johnson's restaurant (restaurant) on Weston Street in Hartford. The plaintiff sustained serious injuries as a result of the fight. At the time of the incident, the plaintiff and Cancel were employed by the Hartford police department (department) in the crimes against persons division, known by the acronym CAPERS.[5] The plaintiff joined the department in 1973 and was appointed to the CAPERS division as a detective in 1993. Cancel, a member of the department since 1979, was promoted to sergeant in charge of the CAPERS division in 1994, making him the plaintiff's direct supervisor. Croughwell, a thirty year veteran of the department, was appointed to the position of chief of police in 1994. As chief of police, he was "responsible for the efficiency, discipline, and the good conduct of the department," which he regulated through the department's code of conduct. The code of conduct allowed Croughwell to discipline officers for inappropriate conduct, either on or off duty.

Prior to the physical altercation at issue in the present case, the plaintiff, Cancel and other members of the CAPERS division had gathered at the restaurant following the end of their shift. Croughwell was not present. The police officers, including the plaintiff and Cancel, consumed several alcoholic beverages while discussing work-related issues, such as overtime pay. The plaintiff told Cancel that, as sergeant, he should be more assert-

[4] The record reveals some confusion as to the exact date of the incident. It appears that the parties went to the restaurant some time before midnight on June 8, 1995, and that the actual altercation occurred in the early morning hours of June 9, 1995. For the sake of clarity, in this opinion, we refer to the events as having occurred on June 9, 1995.

[5] The CAPERS division, now known as major crimes, consisted of six to seven detectives and a supervising officer. It handled homicides, sexual assaults, robberies and carjackings.

ive about procuring overtime for the detectives in the CAPERS division. Cancel reacted defensively. Cancel also became agitated when he spoke about a prank regarding a personal item that was missing from his desk and he left the table at the restaurant. He returned to the table later in the evening and informed the plaintiff and another detective that was still present that he was leaving. The plaintiff decided to leave also and followed Cancel out the door. Thereafter, Cancel and the plaintiff engaged in the physical altercation in the parking lot as a result of which the plaintiff sustained serious physical and psychological injuries.

The plaintiff brought the present action to recover damages for his injuries against Cancel, Croughwell and the city, in a five count complaint. Counts one[6] and two, which were against Cancel only, alleged intentional assault and negligent assault respectively. Count three alleged that the city was liable to the plaintiff for Cancel's conduct pursuant to General Statutes § 7-465.[7] Count four alleged that Croughwell, as chief of police, was negligent in that he failed to supervise Cancel properly and count five alleged vicarious liability against the city pursuant to § 7-465 for Croughwell's conduct. The matter was tried before a jury over a period of

[6] The plaintiff withdrew count one prior to trial.

[7] General Statutes § 7-465 provides in relevant part: "(a) Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality, except firemen covered under the provisions of section 7-308, and on behalf of any member from such municipality of a local emergency planning district, appointed pursuant to section 22a-601, all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as hereinafter set forth, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . ."

several weeks, after which the jury returned a verdict in favor of the plaintiff on counts two, four and five. The jury, through their interrogatories, specifically found that, as to counts four and five, Croughwell was negligent because "he knew or should have known that [Cancel] had violent and aggressive tendencies which placed co-workers at risk and failed to take any action to protect or warn Cancel's subordinates . . . of such risk; he failed to properly investigate or discipline [Cancel] as to incidents of violent and aggressive behavior; [and] he failed to train or retrain [Cancel] . . . [to] prevent or minimize his violent and aggressive tendencies . . . ."[8] The jury awarded the plaintiff economic and noneconomic damages totaling $1 million.

After the verdict was accepted and recorded, the defendants filed a motion for judgment notwithstanding the verdict, a motion to set aside the verdict and a motion for remittitur. Prior to the court's ruling on the motions, the plaintiff reached a settlement with Cancel and withdrew count two of the complaint.[9] Thereafter, the trial court concluded that, as a matter of law, Croughwell owed no duty to the plaintiff on the facts of this case and, accordingly, granted the defendants' motion to set aside the verdict on counts four and five of the complaint and rendered judgment notwithstanding the verdict for the defendants on those counts.

The plaintiff subsequently appealed from the trial court's judgment to the Appellate Court. Upon the plaintiff's motion, we transferred the appeal to this court pursuant to Practice Book § 65-2 and General Statutes § 51-199 (c).

---

[8] The jury, in its interrogatory on count three against the city, specifically found that Cancel was not acting within the scope of his employment at the time of the incident.

[9] In response, the defendants filed a motion, which the trial court granted, to amend their initial remittitur motion to reflect Cancel's settlement.

On appeal, the plaintiff claims that the trial court improperly set aside the jury's verdict and rendered judgment notwithstanding the verdict based upon its improper conclusion that Croughwell did not owe the plaintiff any duty on the facts of this case.[10] Specifically, the plaintiff contends that Croughwell's duty to protect him from harm by an off-duty, fellow police officer derives from three sources: § 315 of the Restatement (Second) of Torts,[11] the department's code of conduct and the common law. We disagree.

We begin by setting forth the standard by which we review the plaintiff's claim. "The trial court's function in setting aside a verdict and this court's role in reviewing that action are well settled. . . . The trial court should not set a verdict aside where there was some evidence upon which the jury could reasonably have based its verdict, but should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . ." (Internal quotation marks omitted.) *Purzycki* v. *Fairfield*, 244 Conn. 101, 106–107, 708 A.2d 937 (1998). The existence of a duty, the pivotal issue in this appeal, however, is a matter of law. Accordingly, our review of this issue is plenary. *Baptiste* v. *Better Val-U Supermarket, Inc.*, 262 Conn. 135, 138, 811 A.2d 687 (2002).

---

[10] In making this claim, the plaintiff argues, in his brief to this court, that this appeal presents a question of proximate cause. We reject the plaintiff's characterization of the basis of the trial court's ruling, which clearly determined that Croughwell owed no duty of care to the plaintiff.

[11] Section 315 of the Restatement (Second) of Torts provides: "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

"(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

"(b) a special relation exists between the actor and the other which gives to the other a right to protection."

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action. . . . Thus, [t]here can be no actionable negligence . . . unless there exists a cognizable duty of care. . . . [T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . .

"With respect to the second inquiry, namely, the policy analysis, there generally is no duty that obligates one party to aid or to protect another party. See 2 Restatement (Second), Torts § 314, p. 116 (1965). One exception to this general rule arises when a definite relationship between the parties is of such a character that public policy justifies the imposition of a duty to aid or to protect another. See W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 56, pp. 373–74; see also 2 Restatement (Second), supra, §§ 314A, 315 . . . . In delineating more precisely the parameters of this limited exception to the general rule, this court has concluded that, [in the absence of] a *special relationship of custody or control*, there is no duty to protect a third person from the conduct of another. . . . *Fraser* v. *United States*, 236 Conn. 625, 632, 674 A.2d 811 (1996)." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Ryan Transportation, Inc.* v. *M & G Associates*, 266 Conn. 520, 525–26, 832 A.2d 1180 (2003).

We first consider the plaintiff's contention that, on the facts of this case, Croughwell owed him a duty of care pursuant to the special relationship exception contained in § 315 of the Restatement (Second). First, the plaintiff claims that § 315 (a) requires Croughwell to control the off-duty conduct of Cancel; second, the plaintiff maintains that § 315 (b) imposes a duty on Croughwell to protect the plaintiff from harm by Cancel.

Before analyzing subsections (a) and (b) separately, we reiterate that, as a whole, § 315, by its express terms, is an exception to the general rule that there is no duty to control the conduct of a third person. The comments to § 315 make this point explicitly, stating that "[t]he rule stated in this Section is a special application of the general rule stated in § 314." 2 Restatement (Second), supra, § 315, comment (a), p. 122. Section 314 of the Restatement (Second), supra, in turn, provides: "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." Mindful that the starting point of our analysis is the general prohibition against imposing upon an individual a duty to control the conduct of a third party, we address the plaintiff's contention that the employment relationship between Croughwell and Cancel is a special relationship within the meaning of § 315 (a).

The plaintiff argues that, pursuant to § 315 (a) of the Restatement (Second), Croughwell and Cancel, as supervisor and subordinate, had a special relationship that created a duty on the part of Croughwell to control Cancel's off-duty conduct. Section 315 provides in relevant part: "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes

a duty upon the actor to control the third person's conduct . . . ." 2 Restatement (Second), supra, § 315 (a). Although this court previously has recognized the special relationship exception articulated in § 315 (a); see, e.g., *Fraser* v. *United States*, 236 Conn. 625, 632, 674 A.2d 811, aff'd, 83 F.3d 591 (2d Cir.), cert. denied, 519 U.S. 872, 117 S. Ct. 188, 136 L. Ed. 2d 126 (1996); we conclude that the facts of the present case do not establish a special relationship between Croughwell and Cancel.

The text of § 315 (a) of the Restatement (Second) does not define the special relationships that give rise to a duty to control the conduct of a third party.[12] The comments to § 315 (a),[13] however, are particularly enlightening in this regard because they reference corresponding Restatement (Second) sections that delineate precisely those relationships that fall within the purview of § 315 (a). See 2 Restatement (Second), supra, § 315, comments (a) through (c). "The relations between the actor and a third person which require the actor to control the third person's conduct are stated in §§ 316–319." Id., comment (c).

Sections 316, 318 and 319 of the Restatement (Second) all identify specific relationships that give rise to a duty to control a third party pursuant to § 315 (a). Section 316[14] imposes a duty on a parent to prevent his

[12] In his reply brief and at oral argument before this court, the plaintiff attempted to establish that Croughwell's duty to control Cancel's conduct arose within the scope of his employment, when Croughwell failed to investigate, properly train or discipline Cancel for his violent tendencies. Whether the purported duty arose on or off duty is irrelevant under § 315 of the Restatement (Second), which does not reference the employment relationship, let alone, at which point the purported duty arose.

[13] We note that the plaintiff, in his brief to this court, does not discuss the commentary accompanying § 315 of the Restatement (Second).

[14] Section 316 of the Restatement (Second), supra, provides: "A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

"(a) knows or has reason to know that he has the ability to control the

minor child from intentionally harming a third party.
Section 318[15] imposes a duty on the possessor of land
or chattels to control the conduct of a licensee. Finally,
§ 319[16] requires those exercising custodial control over
an individual, such as sheriffs or wardens, to prevent
such an individual from harming third parties. An
employment relationship, such as that between Crough-
well and Cancel, is not within the scope of these
sections.

Section 317[17] of the Restatement (Second) does
address a duty arising out of an employment relation-

child, and

"(b) knows or should know of the necessity and opportunity for exercising
such control."

[15] Section 318 of the Restatement (Second), supra, provides: "If the actor
permits a third person to use land or chattels in his possession otherwise
than as a servant, he is, if present, under a duty to exercise reasonable
care so to control the conduct of the third person as to prevent him from
intentionally harming others or from so conducting himself as to create an
unreasonable risk of bodily harm to them, if the actor

"(a) knows or has reason to know that he has the ability to control the
third person, and

"(b) knows or should know of the necessity and opportunity for exercising
such control."

[16] Section 319 of the Restatement (Second), supra, provides: "One who
takes charge of a third person whom he knows or should know to be likely
to cause bodily harm to others if not controlled is under a duty to exercise
reasonable care to control the third person to prevent him from doing
such harm."

[17] Section 317 of the Restatement (Second), supra, provides: "A master is
under a duty to exercise reasonable care so to control his servant while
acting outside the scope of his employment as to prevent him from intention-
ally harming others or from so conducting himself as to create an unreason-
able risk of bodily harm to them, if

"(a) the servant

"(i) is upon the premises in possession of the master or upon which the
servant is privileged to enter only as his servant, or

"(ii) is using a chattel of the master, and

"(b) the master

"(i) knows or has reason to know that he has the ability to control his
servant, and

"(ii) knows or should know of the necessity and opportunity for exercising
such control."

ship, but by its express terms, § 317 is inapposite to the present case. Section 317 imposes a duty on an employer to control the conduct of an off-duty employee when the conduct complained of occurs on the employer's premises or utilizes a chattel of the employer's, *if* the employer knows or has reason to know that he can control the employee *and* recognizes the necessity of doing so. Therefore, § 317 does not apply in the present case because the altercation between the plaintiff and Cancel occurred off department premises and did not involve any chattel of Croughwell or the city.

We next turn to the plaintiff's claim that § 315 (b) of the Restatement (Second) imposes a duty on Croughwell, as chief of police, to protect the plaintiff, his subordinate, from harm by an off-duty, fellow police officer, Cancel. Section 315 of the Restatement (Second), supra, provides in relevant part: "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless . . . (b) a special relation exists between the actor and the other which gives to the other a right to protection."

Although § 315 (b), like subsection (a), is silent as to the definition of a special relationship, the accompanying comments again set forth those relationships that fall within the ambit of § 315 (b). Thus, "[t]he relations between the actor and the other which require the actor to control the conduct of third persons for the protection of the other are stated in §§ 314A and 320." 2 Restatement (Second), supra, § 315, comment (c). Neither § 314A nor § 320 is applicable to the facts of the present case.

Section 320 of the Restatement (Second)[18] imposes a duty of care upon a person who takes custody of

---

[18] Section 320 of the Restatement (Second), supra, provides: "One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm

another person so as to deprive him of his normal powers of self-protection. As the comments to § 320 make clear, this rule is applicable to sheriffs, jailers, officials charged with the care of mentally impaired individuals, private schools and hospitals and public schools. 2 Restatement (Second), supra, § 320, comment (a). Section 314A of the Restatement (Second)[19] imposes a duty upon common carriers, innkeepers and possessors of land who hold their land open to the public. It also contains a provision providing for care of those who have been taken into custody and deprived of their normal powers of self-protection. 2 Restatement (Second), supra, § 314A (4). None of these relationships, however, describes in any way the relationship between the plaintiff and Croughwell, and we therefore conclude that Croughwell had no duty to protect the plaintiff from Cancel pursuant to § 315 (b).

In support of his claim that § 315 of the Restatement (Second) imposes a duty on Croughwell, the plaintiff relies on extrajurisdictional authority applying the special relationship exception from the Restatement (Sec-

him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor

"(a) knows or has reason to know that he has the ability to control the conduct of the third persons, and

"(b) knows or should know of the necessity and opportunity for exercising such control."

[19] Section 314A of the Restatement (Second), supra, provides: "(1) A common carrier is under a duty to its passengers to take reasonable action

"(a) to protect them against unreasonable risk of physical harm, and

"(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

"(2) An innkeeper is under a similar duty to his guests.

"(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

"(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other."

ond).[20] These cases, however, are clearly distinguishable. The plaintiff cites the Washington Supreme Court's decision in *Funkhouser* v. *Wilson*, 89 Wash. App. 644, 662–63, 950 P.2d 501 (1998), in which that court concluded that a church owed a duty to protect children from abuse by a church leader. First, we note that Washington applies the special relationship exception more liberally than this court. Id., 659 ("[t]he Washington courts have recognized that many special relationships give rise to a duty to prevent harms caused by the intentional or criminal conduct of third parties"). Second, *Funkhouser* involved sexual abuse of young children. Id., 648. Although this court consistently has taken the position that children outside the supervision of their parents require special protection; see, e.g., *State* v. *Miranda*, 245 Conn. 209, 230, 715 A.2d 680 (1998) (imposing duty on live-in boyfriend to protect unrelated child from mother's abuse), appeal after remand, 260 Conn. 93, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002); *Purzycki* v. *Fairfield*, supra, 244 Conn. 111 (school officials not immune from liability to child injured in unsupervised hallway);[21] all of the parties in the present case are adults. Finally, in affirming the summary judgment rendered by the trial court, the *Funkhouser* court specifically noted the church's "special protective relation-

---

[20] The plaintiff argues that the trial court improperly relied on extrajurisdictional authority by citing *Escobar* v. *Madsen Construction Co.*, 226 Ill. App. 3d 92, 589 N.E.2d 638 (1992). We conclude that the trial court's reference to *Escobar* was proper and note that the plaintiff's argument is inconsistent with his own reliance on several out-of-state cases with fact patterns readily distinguishable from the present case.

[21] The plaintiff further argues that this court should recognize a special relationship between an employer and an employee because we previously have recognized the duty of a board of education to protect students from harm by third parties. See *Purzycki* v. *Fairfield*, supra, 244 Conn. 111. The relationship between a board of education and its minor students is materially different from that between the chief of police and his subordinate adult officers. We therefore reject this claim.

ship with the victims based on entrustment for their spiritual well being." *Funkhouser* v. *Wilson*, supra, 663. *Funkhouser* simply is inapplicable here.

The plaintiff also relies on the New Hampshire case of *Marquay* v. *Eno*, 139 N.H. 708, 719–20, 662 A.2d 272 (1995), for the proposition that other states recognize a special relationship between employers and employees. Like *Funkhouser*, *Marquay* involved sexual abuse of schoolchildren. Moreover, the New Hampshire Supreme Court later distinguished *Marquay* and expressly stated that § 314A of the Restatement (Second) does not impose a duty on employers to protect employees from the criminal acts of a third party. See *Dupont* v. *Aavid Thermal Technologies, Inc.*, 147 N.H. 706, 709–10, 798 A.2d 587 (2002) ("[w]e decline to hold that the employment relationship is the type of 'special' relationship that gives rise to a duty to protect against foreseeable criminal attacks by third parties"). Indeed, the *Dupont* court explicitly disavowed attempts to liken the employer-employee relationship to the school-student relationship. Id., 711 ("[w]e are unpersuaded by the plaintiff's attempts to liken the employer/employee relationship to the school/student relationship in *Marquay*").

The plaintiff also claims that the department's code of conduct imposed a duty on Croughwell to protect the plaintiff from harm by Cancel. We disagree. The code of conduct is the mechanism by which the chief of police, in this case, Croughwell, regulates the "efficiency, discipline, and good conduct of the department . . . ." By its terms, the code of conduct establishes standards of conduct, both on and off duty, the violation of which may subject a department employee to disciplinary action. It does not, however, impose any affirmative obligation on the part of Croughwell to enforce the code of conduct's provisions, and therefore does not establish any duty owed by Croughwell to the plaintiff.

To require as much transcends Croughwell's responsibility for departmental efficiency and transforms him into a parental proxy responsible for micromanaging the private lives of employees. We are unwilling to do that here.

The plaintiff's final claim[22] is that, independent of the Restatement (Second), the common law gives rise to a duty on the part of Croughwell to protect the plaintiff from harm by an off-duty, fellow officer. The plaintiff cites *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 611–12 n.10, 662 A.2d 753 (1995) and *Purzycki* v. *Fairfield*, supra, 244 Conn. 101, for the proposition that Connecticut courts recognize a special relationship exception outside the provisions of the Restatement (Second). While this court has recognized a duty of protection in certain factual circumstances, the cases cited by the plaintiff are unavailing on the facts of the present case. As we already have noted, *Purzycki* is readily distinguishable because it involved the special relationship between a school board and the minor students under its care. *Purzycki* v. *Fairfield*, supra, 105. In *Stewart*, in which this court affirmed a jury's award of damages for the wrongful death of the plaintiff's decedent stemming from her murder in a parking lot owned by the defendant, we did not consider whether a special relationship existed between the decedent and the defendant. *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 606. Instead, we limited our analysis to proximate causation. Id.

---

[22] The plaintiff also maintains that a duty exists pursuant to General Statutes § 31-49. Because a claim based on this statute was not raised before the trial court, however we decline to address it here. See *Bell Atlantic Mobile, Inc.* v. *Dept. of Public Utility Control*, 253 Conn. 453, 485, 754 A.2d 128 (2000) (we ordinarily will not review an issue that has not been properly raised before trial court); Practice Book § 60-5 ("court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial").

We therefore agree with the trial court that on the facts of this case, Croughwell owed no duty to protect the plaintiff or to control the conduct of Cancel.[23] The trial court properly granted the defendants' motion to set aside the verdict and rendered judgment for the defendants notwithstanding the verdict.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[23] Because we conclude that no relationship existed giving rise to a duty under the policy prong of our duty analysis, we do not consider whether the incident was foreseeable. See, e.g., *Ryan Transportation, Inc.* v. *M & G Associates*, supra, 266 Conn. 529 ("[i]n light of our determination that there did not exist a relationship involving . . . custody of or control over the plaintiff that would warrant the imposition of a duty to protect the plaintiff from third party conduct, we need not address the issue of foreseeability").