******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TRACEY HAYNES ET AL. *v.* CITY OF MIDDLETOWN
(SC 19175)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Espinosa, Js.

*Argued May 19—officially released November 4, 2014*

*Hugh D. Hughes*, with whom, on the brief, were *William F. Gallagher* and *Mark A. Balaban*, for the appellants (plaintiffs).

*Matthew Dallas Gordon*, with whom were *Nicholas N. Ouellette* and, on the brief, *Ruth A. Kurien*, for the appellee (defendant).

*Opinion*

ROGERS, C. J. The primary issue that we must resolve in this certified appeal is whether the Appellate Court properly affirmed the judgment of the trial court setting aside the jury verdict in favor of the plaintiffs on the ground that the plaintiffs failed to prove the imminent harm to identifiable persons exception to the defense of governmental immunity. The named plaintiff, Tracey Haynes, individually and as the parent and next friend of Jasmon Vereen, her then minor son,[1] brought this action alleging that Vereen had been injured when he was pushed into the jagged edge of a broken locker at Middletown High School (school). The defendant, the city of Middletown, raised the special defense that it was immune from liability pursuant to General Statutes § 52-557n (a) (2) (B).[2] The case was tried to a jury. After the plaintiffs rested their case, the defendant filed a motion for a directed verdict on the ground of governmental immunity. The plaintiffs opposed the motion on the ground that the exception to governmental immunity for acts or omissions that subject identifiable persons to imminent harm applied. The trial court deferred action on the defendant's motion until after the jury returned its verdict, but the court did not instruct the jury on the defendant's special defense of governmental immunity or the plaintiffs' claim that the exception applied. The jury ultimately returned a verdict in favor of the plaintiffs. The defendant then filed a motion to set aside the verdict and to render judgment for the defendant on the ground of governmental immunity, which the trial court granted. The plaintiffs appealed to the Appellate Court, which affirmed the judgment of the trial court on the alternative ground that the plaintiffs had not pleaded the imminent harm to identifiable persons exception in its reply to the defendant's special defense. *Haynes* v. *Middletown*, 122 Conn. App. 72, 82, 997 A.2d 636 (2010). The plaintiffs then appealed to this court, which reversed the judgment of the Appellate Court and remanded the case to that court with direction to allow the parties to brief the issue on which the Appellate Court had resolved the appeal. *Haynes* v. *Middletown*, 306 Conn. 471, 475, 50 A.3d 880 (2012). On remand, the Appellate Court ordered the parties to submit supplemental briefs on that issue, but ultimately concluded that the trial court properly had concluded that there was insufficient evidence of imminent harm to Vereen on the basis of the arguments that the parties had originally presented on appeal. *Haynes* v. *Middletown*, 142 Conn. App. 720, 726–27, 66 A.3d 899 (2013). This court then granted the plaintiffs' petition for certification to appeal on the following issue: "Did the Appellate Court properly determine that the trial court judgment setting aside the jury verdict in favor of the plaintiffs should be affirmed on the ground that the plaintiffs had not satisfied the identifiable person, imminent harm exception to governmental immunity?"

*Haynes* v. *Middletown*, 309 Conn. 919, 919–20, 70 A.3d 1067 (2013). We conclude that, on the basis of the plaintiffs' evidence, a properly instructed jury reasonably could conclude that the defendant's conduct had subjected an identifiable person to imminent harm. We further conclude that, because the jury was not instructed that it was required to make this finding, the case must be remanded to the trial court for a new trial. Accordingly, we reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts and procedural history. "On March 15, 2005, following their physical education class, Vereen and other students were changing their clothes in the boys' locker room. Although the school had informed students in writing that horseplay in the locker room was not permitted, Vereen and other students were engaged in horseplay at the time.[3] Another student, Andre Francis, pushed Vereen into a locker with an exposed jagged and rusted edge. Vereen suffered a cut on his arm that left a scar. According to Vereen and Francis, the locker had been in a broken condition since the beginning of the school year.

"As a result of Vereen's injury, the plaintiffs commenced an action against the defendant seeking monetary damages. The plaintiffs alleged that Vereen was a student at the school who was in the locker room with other students on March 15, 2005, for a physical education class. They also alleged that there was a broken locker with an exposed jagged edge in the locker room and that the locker had been in that condition long enough for the exposed metal to have become rusty. Moreover, Vereen was injured when he was pushed into the broken locker during school hours. The complaint also alleged that the defendant and its agents, servants or employees were negligent, and that the action was being brought pursuant to . . . § 52-557n. The defendant denied the plaintiffs' allegations of negligence and asserted the special defenses of governmental immunity and comparative negligence. The plaintiffs replied to the defendant's special defenses with a general denial.

"The case was tried to a jury in November, 2008. At the conclusion of the plaintiffs' case, the defendant filed a written motion for a directed verdict 'on the ground that the plaintiffs had presented no evidence to show that the alleged actions of the defendant were governed by any policies or procedures, as alleged in their complaint. The defendant argued that the lack of any such evidence demonstrated that the alleged negligent actions were discretionary and not ministerial, and that the doctrine of discretionary governmental immunity therefore would bar the plaintiffs' recovery.' Counsel for the plaintiffs acknowledged that the alleged negligent acts were discretionary in nature but that the identifiable person, imminent harm exception to

governmental immunity applied because the condition of the locker presented an imminent harm to an identifiable class of victims, i.e., students in the locker room.[4] The court reserved judgment on the defendant's motion for a directed verdict, and the defendant presented its case.

"None of the parties filed a request to charge with respect to governmental immunity or any exception thereto, and the [trial] court did not instruct the jury on those legal principles. On November 25, 2008, the jury returned a verdict in favor of Vereen, although it found him to have been 33 percent responsible for his injury. On December 2, 2008, the defendant filed a motion to set aside the verdict and to render judgment in its favor. After the parties had briefed the issue and presented the court with oral arguments, the court issued a memorandum of decision on March 31, 2009; see Practice Book § 16-38; in which the court granted the defendant's motion to set aside the verdict and rendered judgment in its favor.[5]

"The plaintiffs appealed to [the Appellate Court] claiming that 'the [trial] court improperly set aside the verdict on the ground of governmental immunity because (1) the defendant waived that defense by failing to request a charge on municipal immunity and (2) there was sufficient evidence of imminent harm for the plaintiffs' claim to fall within the identifiable person, imminent harm exception to the immunity generally afforded municipalities for the negligent performance of discretionary acts.' *Haynes* v. *Middletown*, supra, 122 Conn. App. 73." (Footnotes altered.) *Haynes* v. *Middletown*, supra, 142 Conn. App. 723–25. The Appellate Court ultimately concluded that "the defendant did not waive its special defense of governmental immunity by failing to request a jury instruction and that the [trial] court properly determined that the plaintiffs had not produced sufficient evidence of imminent harm to prevail on the exception to governmental immunity for discretionary acts." Id., 726–27.

This certified appeal followed. The plaintiffs contend that the Appellate Court improperly determined that, as a matter of law, they had failed to prove that the defendant's conduct subjected an identifiable person to imminent harm. The plaintiffs further contend that, if this court concludes that the Appellate Court's determination was incorrect, this court must reinstate the jury verdict because the defendant waived its right to a jury determination on the issue when it failed to ask the trial court for a jury instruction on its governmental immunity defense. The defendant disputes the plaintiffs' first claim and contends that the second claim is not reviewable because it was not encompassed by the certified question. It further claims that, if the second claim is reviewable, it is meritless because it was the plaintiffs' obligation to ask the trial court for a jury

instruction on the imminent harm to identifiable persons exception. We conclude that the Appellate Court improperly determined that, on the basis of the evidence that the plaintiffs presented at trial, no reasonable juror could find that the defendant's conduct had subjected an identifiable person to imminent harm. We further conclude that the issue of whether this court may reinstate the jury verdict or, instead, must remand the case to the trial court for a new trial is reviewable, and that the case must be remanded to the trial court for a new trial so that the fact finder may make the determination as to whether the defendant's conduct subjected identifiable persons to imminent harm.

We first address the question of whether the Appellate Court properly determined that the plaintiffs had failed to meet their burden of proving the imminent harm to identifiable persons exception to governmental immunity. The defendant does not dispute that Vereen, as a student in a public school, was in a class of identifiable persons for purposes of the imminent harm to identifiable persons exception. See *Burns* v. *Board of Education*, 228 Conn. 640, 649, 638 A.2d 1 (1994) (public schoolchildren are "an identifiable class of beneficiaries" of school system's duty of care for purposes of imminent harm to identifiable persons exception). Accordingly, our focus is on whether the plaintiffs made out a prima facie case that the defendant's acts or omissions subjected Vereen to imminent harm.

We begin with the standard of review. "The standard of review applied to directed verdicts is clear. A directed verdict is justified if, on the evidence the jury reasonably and legally could not have reached any other conclusion. . . . In reviewing the trial court's decision to direct a verdict in favor of a defendant we must consider the evidence in the light most favorable to the plaintiff. . . . While it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . The standard of review governing a motion for judgment notwithstanding the verdict is the same because a motion for judgment notwithstanding the verdict is not a new motion, but the renewal of a motion for a directed verdict." (Citations omitted; internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 255 Conn. 390, 400, 766 A.2d 416 (2001).

We next review the law governing governmental immunity and the imminent harm to identifiable persons exception to governmental immunity. "[Section] 52-557n abandons the common-law principle of municipal sovereign immunity and establishes the circumstances in which a municipality may be liable for damages. . . . One such circumstance is a negligent act or omission of a municipal officer acting within the scope of his or her employment or official duties. . . . [Section] 52-557n (a) (2) (B), however, explicitly shields

a municipality from liability for damages to person or property caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Edgerton* v. *Clinton*, 311 Conn. 217, 229, 86 A.3d 437 (2014).

"This court has recognized an exception to discretionary act immunity that allows for liability when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . . This identifiable person-imminent harm exception has three requirements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. . . . All three must be proven in order for the exception to apply." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 230–31. "[T]he ultimate determination of whether [governmental] immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to the applicability of the defense . . . [where] resolution of those factual issues is properly left to the jury." (Internal quotation marks omitted.) *Purzycki* v. *Fairfield*, 244 Conn. 101, 107–108, 708 A.2d 937 (1998).

In the present case, the trial court concluded that the plaintiffs had failed to establish the imminent harm to identifiable persons exception for two reasons. First, the court held that, pursuant to this court's decision in *Heigl* v. *Board of Education*, 218 Conn. 1, 8, 587 A.2d 423 (1991), the defendant had no "specific duty to supervise high school students." The trial court further concluded that the plaintiffs had not pleaded that there was a need for supervision in the present case because the students engaged in roughhousing or horseplay in the vicinity of the defective locker, and they had presented no evidence to support such a claim.

Second, the trial court concluded that the defective locker, in and of itself, did not constitute an imminent harm. The court rejected the plaintiffs' claim that the locker constituted an imminent harm because the danger created by the locker could not have occurred at any time in the future, but was limited both temporally and geographically. See *Burns* v. *Board of Education*, supra, 228 Conn. 650 (icy conditions on school walkway constituted imminent harm because "the accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition in this particularly treacherous area of the campus" [internal quotation marks omitted]); see also *Purzycki* v. *Fairfield*, supra, 244 Conn. 110 (child's unsupervised use of school hallway during recess constituted imminent harm because it involved "a limited

time period and limited geographical area, namely, the one-half hour interval when second grade students were dismissed from the lunchroom to traverse [the hallway]"). The trial court concluded that, instead, because the locker could have caused an injury at any time, the present case was governed by *Evon* v. *Andrews*, 211 Conn. 501, 508, 559 A.2d 1131 (1989), in which this court held that a harm that "could have occurred at any future time or not at all" was not an imminent harm.

With respect to the trial court's first ground for rejecting the plaintiffs' claim that the defendant's conduct subjected identifiable persons to imminent harm, we conclude that the trial court's reliance on this court's decision in *Heigl* v. *Board of Education*, supra, 218 Conn. 1, was misplaced. In *Heigl*, this court rejected the plaintiffs' claim that the defendant had a general duty "to supervise the students during the hours for school attendance . . . ." Id., 7; see also id., 8 (this court has never "stated that a board of education has a specific duty to supervise high school students"). In *Burns* v. *Board of Education*, supra, 228 Conn. 650–51, however, this court distinguished *Heigl* on the ground that *Heigl* had "turned on the public/private duty distinction of the public duty doctrine" and did not involve the "foreseeable class of victim exception to governmental immunity, which applies irrespective of whether the official's duty is technically public or private in nature." This court held in *Burns* that school officials do have a general duty "to protect the pupils in [their] custody from dangers that may reasonably be anticipated."[6] Id., 649. *Burns* did not limit this holding to grade school students.[7] Accordingly, we conclude that *Heigl* is inapplicable when the plaintiff has made a colorable claim that the defendant's failure to supervise a high school student has subjected the student to imminent harm.[8]

We next address the trial court's conclusion, which the Appellate Court upheld, that the plaintiffs had failed to establish that the defective locker posed a risk of imminent harm because the locker could have caused an injury "at any future time or not at all." *Evon* v. *Andrews*, supra, 211 Conn. 508. Although we agree with the plaintiffs that the facts of the present case are very similar to the facts in *Purzycki*, in which this court concluded that the injured student had been subjected to imminent harm because the case involved "a limited time period and limited geographical area"; *Purzycki* v. *Fairfield*, supra, 244 Conn. 110; we conclude that the portion of this court's decision in *Burns*, on which *Purzycki* relied, holding that a harm is imminent when the condition causing the risk of harm is temporally limited and the risk of harm is "significant and foreseeable" should be overruled.[9] *Burns* v. *Board of Education*, supra, 228 Conn. 650. To explain why, a closer review of this court's decisions in *Evon*, *Purzycki* and *Burns* is required.

In *Evon* v. *Andrews*, supra, 211 Conn. 502, the plaintiffs alleged that their decedents had been killed when a fire destroyed their residence. They claimed that the city of Waterbury and its officers "had been negligent in failing properly to enforce various statutes, regulations and codes concerning the maintenance of rental dwellings"; id.; and that this negligence had subjected readily identifiable persons—the decedents—to imminent harm. Id., 507. This court concluded that "[t]he risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future. . . . This is clearly not the situation in which a police officer stood by and watched a public brawl that resulted in a person being shot. See *Sestito* v. *Groton*, [178 Conn. 520, 523, 423 A.2d 165 (1979)]. The present allegations do not even rise to the level of the imminence we rejected in *Shore* v. *Stonington*, [187 Conn. 147, 153, 444 A.2d 1379 (1982)], in which a police officer permitted a drunk driver to continue on his way, resulting in the death of the plaintiff's decedent. In the present instance, the fire could have occurred at any future time or not at all. We cannot accept the proposition that the plaintiffs' decedents in this case were readily identifiable victims subject to imminent harm. As we observed in *Shore* v. *Stonington*, supra, 157, [t]he adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society." (Citation omitted; internal quotation marks omitted.) *Evon* v. *Andrews*, supra, 508.

Thus, this court's decision in *Evon* implies that, if a harm is not so likely to happen that it gives rise to a clear duty to correct the dangerous condition creating the risk of harm immediately upon discovering it, the harm is not imminent. See *Tryon* v. *North Branford*, 58 Conn. App. 702, 712, 755 A.2d 317 (2000) (under *Evon*, imminent harm is "harm ready to take place within the immediate future"). This reading of *Evon* is consistent both with the meaning of the word "imminent"[10] and with our case law holding that the imminent harm to identifiable persons exception "represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force." (Internal quotation marks omitted.) *Violano* v. *Fernandez*, 280 Conn. 310, 319, 907 A.2d 1188 (2006); *Durrant* v. *Board of Education*, 284 Conn. 91, 106, 931 A.2d 859 (2007) (same); *Doe* v. *Petersen*, 279 Conn. 607, 615, 903 A.2d 191 (2006) (same); *Shore* v. *Stonington*, supra, 187 Conn. 153 ("[W]here the duty of the public official to act is not ministerial but instead involves the exercise of discretion, the negligent failure to act will not subject the public official to liability unless the duty to act is clear and unequivocal. . . . We have recognized the existence of such duty in situations where it would be

apparent to the public officer that his failure to act would be likely to subject an identifiable person to imminent harm." [Citation omitted.]); see also *Bonington* v. *Westport*, 297 Conn. 297, 314, 999 A.2d 700 (2010) ("Imminent does not simply mean a foreseeable event at some unspecified point in the not too distant future. Rather, we have required plaintiffs to identify a discrete place and time period at which the harm will occur."). This interpretation of *Evon* is also consistent with our cases recognizing that "[t]he discrete person/imminent harm exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state." (Internal quotation marks omitted.) *Evon* v. *Andrews*, supra, 211 Conn. 507; see also *Durrant* v. *Board of Education*, supra, 106 (same). This is because "[t]he adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society." (Internal quotation marks omitted.) *Evon* v. *Andrews*, supra, 508.

In *Burns* v. *Board of Education*, supra, 228 Conn. 650, however, this court interpreted the discussion of imminent harm in *Evon* to apply to harms arising from dangerous conditions that are *temporary*, if the risk of harm is significant and foreseeable. In *Burns*, the plaintiffs, David Burns and his mother, Darlene Vrendburgh, alleged that Burns had been injured in a fall on an icy high school courtyard during school hours. Id., 642. The plaintiffs further alleged that the defendant's negligent failure to salt and sand the icy conditions had subjected an identifiable victim—Burns—to imminent harm. Id., 645. This court concluded that, unlike the risk of fire that was at issue in *Evon* v. *Andrews*, supra, 211 Conn. 501, "this accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition in this particularly treacherous area of the campus.[11] Further, the potential for harm from a fall on ice was significant and foreseeable." (Footnote added; internal quotation marks omitted.) *Burns* v. *Board of Education*, supra, 650; see also id., 649 (municipal defendant had "the duty to protect . . . pupils . . . from dangers that may reasonably be anticipated"). This court concluded that, under these circumstances, the defendant's conduct came within the imminent harm to identifiable persons exception to governmental immunity.[12] Id., 650. Similarly, this court held in *Purzycki* that the risk of injury from the unsupervised use of school hallways during recess was imminent under *Burns* because the case involved "a limited time period and limited geographical area" and "the risk of harm was significant and foreseeable . . . ." *Purzycki* v. *Fairfield*, supra, 244 Conn. 110.

Thus, purporting to apply this court's holding in *Evon* v. *Andrews*, supra, 211 Conn. 508, that a risk of harm

is not imminent if the harm "could have occurred at any future time or not at all," the court in *Burns* improperly concluded that imminent harms are harms that *cannot happen in the distant future* because the condition causing the risk of harm is *temporary*. Contrary to the holding in *Burns*, however, this court did not hold in *Evon* that imminent harms are harms that *can only* happen in the immediate future because they arise from temporary conditions. Indeed, this interpretation of *Evon* defies common sense. If a condition created only a low risk of harm, the fact that the condition was temporary would not somehow convert a harm that might well have never occurred into one that was imminent.[13] Moreover, the "significant and foreseeable" standard—for which the court in *Burns* provided no citation of authority—appears to fall somewhere between the demanding imminent harm standard and the ordinary negligence standard, under which a person may be held liable for an injury if there was an "unreasonable risk" that it would occur. *Vendrella* v. *Astriab Family Ltd. Partnership*, 311 Conn. 301, 337–38, 87 A.3d 546 (2014) ("[T]he test for foreseeability is would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result . . . . As used in this context, the phrase likely to result means that there was an unreasonable risk that the injury would result." [Citation omitted; internal quotation marks omitted.]). Finally, we note that, because the holding in *Burns* that a harm is imminent if it *can only* occur in the near future disregards the logic underlying this court's holding in *Evon*, namely, that a harm is imminent if it is *so likely to happen* that the duty to act immediately is clear and unequivocal, application of the *Burns* standard has led to confusion and inconsistent results in cases involving temporary but recurring dangerous conditions. Compare *Colon* v. *Board of Education*, 60 Conn. App. 178, 187, 758 A.2d 900 (risk of harm from opening door into school hallway was imminent because "danger presented was limited in duration, as it could happen only when students are in the hallway in a dangerous spot"), cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000), with *Haynes* v. *Middletown*, supra, 142 Conn. App. 737 (risk of harm from jagged edge of broken locker to which students were exposed when they were in locker room for brief period after gym class was not imminent because harm could have happened at any future time or not at all).[14]

Accordingly, we conclude that this court in *Burns* incorrectly held that a foreseeable harm may be deemed imminent if the condition that created the risk of harm was only temporary and the risk was significant and foreseeable. Our statement in *Evon* v. *Andrews*, supra, 211 Conn. 508, that a harm is not imminent if it "could have occurred at any future time or not at all" was not focused on the *duration* of the alleged dangerous

condition, but on the *magnitude of the risk* that the condition created. Accordingly, the proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm.[15] We therefore overrule *Burns* and *Purzycki* to the extent that they adopted a different standard.[16]

With this standard in mind, we turn to the evidence in the present case. The evidence showed that the school had informed students in writing at the beginning of the school year that horseplay in the locker room was prohibited. There was also evidence that school officials knew that horseplay in the locker rooms was an ongoing issue. In addition, there was evidence that the locker was in a dangerous condition and that it had been in that condition since the beginning of the school year, seven months before the injury occurred. The jury reasonably could have inferred from this evidence that the dangerous condition was apparent to school officials.[17] Although this evidence is far from compelling, we are unable to conclude that no reasonable juror could find that it was apparent to school officials that, in combination, the ongoing problem of horseplay in the locker room and the presence of the broken locker were so likely to cause an injury to a student that the officials had a clear and unequivocal duty to act immediately to prevent the harm either by supervising the students while they were in the locker room to prevent horseplay or by fixing the broken locker.[18] Accordingly, we conclude that the Appellate Court improperly upheld the ruling of the trial court granting the defendant's motion to set aside the verdict in favor of the plaintiffs and to render judgment in favor of the defendant on the ground that no reasonable juror could have found that the plaintiffs had established the imminent harm to identifiable persons exception to governmental immunity.

We next turn to the plaintiffs' claim that this court should reinstate the jury verdict in their favor because the defendant waived its right to a jury determination on the imminent harm to identifiable persons exception by failing to request that the jury be instructed on its governmental immunity defense.[19] We conclude that the case must be remanded to the trial court so that the fact finder can make a determination on this issue.

The following procedural history, some of which is previously set forth in this opinion, is relevant to this claim. After the plaintiffs rested their case at trial, the defendant filed a motion for a directed verdict, claiming that the plaintiffs' claim was barred by governmental immunity because the plaintiffs had not established that the defendant's conduct with regard to the broken locker was ministerial rather than discretionary. Coun-

sel for the plaintiffs conceded that the defendant's conduct was discretionary, but contended that it fell into the imminent harm to identifiable persons exception to governmental immunity. Counsel for the plaintiffs also indicated that the defendant's motion was a "bit of a surprise" at that point in the proceedings because the defense of governmental immunity is usually raised in a motion to strike or a motion for summary judgment and that, if the defendant intended to go "forward with the defense, it would have to be decided by the jury." In addition, counsel for the plaintiffs pointed out that, although the defendant had pleaded the special defense of governmental immunity, the defense had been "abandoned throughout this litigation" and that the defendant had pursued no discovery on the issue. The defendant did not contend that there was insufficient evidence to support the imminent harm to identifiable persons exception, but contended that that exception applied only to the conduct of municipal employees, not to municipalities themselves.[20]

The trial court did not rule on the defendant's motion for a directed verdict immediately, but asked the defendant if it intended to present evidence. The defendant responded that it did. After the close of the defendant's evidence, the case was presented to the jury without any instruction on the defense of governmental immunity or the exception to that defense for conduct that subjects identifiable persons to imminent harm. After the jury returned a verdict for the plaintiffs, the defendant filed a motion to set aside the verdict and to render judgment for the defendant on the ground of governmental immunity, which the trial court granted. At the same time, the trial court granted the defendant's original motion for a directed verdict.

The plaintiffs contend that, because the defendant did not request a jury instruction on its defense of governmental immunity, it waived its right to a jury determination on the issue and, therefore, if this court determines that there was sufficient evidence to submit the imminent harm to identifiable persons exception to the jury, we should reinstate the jury verdict instead of remanding the case for a new trial. The defendant contends that this issue was not encompassed by the certified question. The defendant further contends that, because the plaintiffs conceded that the defendant's conduct with regard to the broken locker was discretionary, the defendant had established the defense of governmental immunity and there was no reason for it to ask for a jury charge on that question. Rather, the defendant contends, it was up to the plaintiffs to ask the trial court for a jury charge on the imminent harm to identifiable persons exception.

We conclude that, under the unusual circumstances of the present case, the fairest course is to proceed as if the trial court had never submitted the case to the

jury, but had granted the defendant's original motion for a directed verdict when it was submitted. The trial court essentially took two inherently contradictory positions on the defendant's motion. On the one hand, by deferring its ruling on the motion until after the jury returned its verdict, the court left open the question of whether the plaintiffs had established the imminent harm to identifiable persons exception to the defendant's governmental immunity defense. Cf. Practice Book § 16-37 ("[w]henever a motion for a directed verdict . . . is denied or for any reason is not granted, the judicial authority is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion"). On the other hand, by failing to submit the issue to the jury, the court effectively took the position that the evidence was insufficient to support the exception.[21] Indeed, the defendant contends on appeal to this court that the trial court *properly declined* to instruct the jury on the exception because it was not supported by the evidence. See *Stokes* v. *Norwich Taxi, LLC*, 289 Conn. 465, 485, 958 A.2d 1195 (2008) ("If . . . the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury. . . . Thus, a trial court should instruct the jury in accordance with a party's request to charge [only] if the proposed instructions are reasonably supported by the evidence." [Internal quotation marks omitted.]). If the trial court believed that there was insufficient evidence to support the imminent harm to identifiable persons exception as a matter of law, however, it should not have submitted the case to the jury, because the plaintiffs could prevail only if they established the exception.

We recognize that, because the plaintiffs had conceded that the defendant would be immune pursuant to § 52-557n (a) (2) (B) unless they established the imminent harm to identifiable persons exception, the burden was arguably on them to request an instruction on the exception. The defendant has never claimed, however, that the plaintiffs *waived* the exception by failing to request an instruction on it.[22] Rather, it has claimed only that the plaintiffs failed to prove that the exception applied. Indeed, the bulk of the defendant's motion to set aside the verdict and to render judgment in favor of the defendant—which, obviously, was filed after the jury returned its verdict in the plaintiffs' favor—was devoted to refuting the applicability of the exception on the merits. By disputing the merits of the plaintiffs' contention that the exception applied, the defendant implicitly conceded that the plaintiffs could prevail on their negligence claim if the trial court denied the motion to set aside the verdict on the merits. Thus, this is not a case in which a party has simply failed to raise a claim in the trial court. The plaintiffs expressly raised the imminent harm to identifiable persons exception

and both the defendant and the trial court proceeded as if the merits of that claim were before the court, even after the case was submitted to the jury without any instruction on the exception.

Although we agree with the plaintiffs that, under these unique circumstances, the trial court and the defendant bear some responsibility for the failure to submit the exception to the jury, we reject the plaintiffs' claim that they are entitled to reinstatement of the jury verdict. Rather, because *both* parties—as well as the trial court—bear some blame for the confusion, we conclude that the fairest course is to proceed as if the trial court failed to instruct the jury on the exception because it had concluded that the exception was not supported by the evidence. In other words, we treat the case as if the trial court had granted the defendant's original motion for a directed verdict and the case was never submitted to the jury. Accordingly, we conclude that we should remand the case to the trial court so that the fact finder may make a finding on the defendant's special defense of governmental immunity and the imminent harm to identifiable persons exception to that defense.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for a new trial.

In this opinion PALMER, ZARELLA, McDONALD and ESPINOSA, Js., concurred.

[1] We refer herein to Haynes and Vereen collectively as the plaintiffs and to Vereen individually by name, where appropriate.

[2] General Statutes § 52-557n (a) provides in relevant part: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

[3] The opinion of the Appellate Court in *Haynes* v. *Middletown*, supra, 122 Conn. App. 74, sets forth the following additional facts: "[Vereen and the other students] had approximately five minutes to change out of their gym clothes before they were required to leave for their next scheduled class."

In addition, "Robert Smernoff, one of the school's physical education teachers at the time of the incident, testified that there were seven periods during the school day. When [Vereen's] physical education class had ended, Smernoff unlocked the doors to the two locker rooms and monitored the locker rooms while the students were changing their clothes. He testified that horseplay was an issue at the school and that he tried to move the students along so the incoming class would not mix with the outgoing class. He also testified that sometimes the students would stay in the locker room past the allotted time in order to visit with the incoming students." Id., 74 n.4.

[4] "Despite having argued the applicability of the identifiable person, imminent harm exception in response to the defendant's motion for a directed verdict, the plaintiffs never amended their general denial of the defendant's governmental immunity special defense." *Haynes* v. *Middletown*, supra, 142 Conn. App. 724 n.3.

[5] At the same time, the trial court also granted the defendant's original motion for a directed verdict.

[6] We conclude later in this opinion that *Burns* improperly broadened the imminent harm standard, and that to constitute imminent harm, it is not

enough to establish that a harm "may reasonably be anticipated." *Burns* v. *Board of Education*, supra, 228 Conn. 649. Rather, the risk of harm must be so great that the municipal defendant had a clear and unequivocal duty to act immediately to prevent it. Nevertheless, we agree with *Burns* to the extent that it held that schools have a duty to protect students from imminent harm. Id., 650.

[7] This court stated in *Purzycki* v. *Fairfield*, supra, 244 Conn. 114, that *Heigl* did not apply when a grade school student has been subjected to imminent harm. Relying on this statement in *Purzycki*, the defendant in the present case contends that "[t]he imposition of liability on the defendent for failing to supervise Vereen, who was in high school, would be contrary to existing law." Thus, the defendant suggests that, because this court held in *Purzycki* that *Heigl* does *not* bar municipal liability when a *grade school* student has been subjected to imminent harm, *Heigl does* bar municipal liability when a *high school* student has been subjected to imminent harm. The latter issue, however, was not before this court in *Purzycki*.

Although we conclude that *Heigl* does not apply when the plaintiff has raised the imminent harm to identifiable persons exception, we emphasize that, in determining whether a harm was imminent, the fact finder may consider all of the facts and circumstances surrounding the dangerous condition, including the characteristics of the persons who are likely to be exposed to it. A condition that is not an imminent harm in one context may be an imminent harm in another context. For example, a reasonable person might conclude that, while an open fire does not pose a risk of imminent harm to unsupervised high school students, it does pose a risk of imminent harm to unsupervised nursery school students.

[8] With respect to the trial court's conclusion that the plaintiffs could not prevail as a matter of law because they had not specifically alleged that supervision of the students was required because they were known to engage in horseplay, we disagree. The plaintiffs alleged that the defendant had been negligent in failing to supervise the students and there was evidence that the school knew that students engaged in horseplay in the locker room. In addition, during closing arguments, counsel for the plaintiffs argued that it should have been apparent to the defendant that horseplay in the locker room created a "problem." As we discuss more fully later in this opinion, we conclude that, under these circumstances, a juror reasonably could conclude that the defendant's failure to supervise the students in the locker room was negligent.

[9] After oral argument in this court, we ordered the parties to submit supplemental briefs on the question of "whether this court should overrule its decisions in *Burns* v. *Board of Education*, [supra, 228 Conn. 640], and *Purzycki* v. *Fairfield*, [supra, 244 Conn. 101], to the extent that they held that the imminent harm to identifiable persons exception to governmental immunity applies when the condition creating the risk of harm was temporary and the potential for harm was significant and foreseeable; see *Burns* v. *Board of Education*, supra, 650; *Purzycki* v. *Fairfield*, supra, 110; and whether this court should reaffirm the line of cases holding that, to be deemed imminent, the risk of harm must be so likely to occur in the near future that the municipal official's duty to act is clear and unequivocal; see *Violano* v. *Fernandez*, 280 Conn. 310, 319, 907 A.2d 1188 (2006) (imminent harm to identifiable persons exception 'represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force' . . .); *Durrant* v. *Board of Education*, 284 Conn. 91, 106, 931 A.2d 859 (2007) (same); *Doe* v. *Petersen*, 279 Conn. 607, 615, 903 A.2d 191 (2006) (same); *Shore* v. *Stonington*, 187 Conn. 147, 153, 444 A.2d 1379 (1982) ('[W]here the duty of the public official to act is not ministerial but instead involves the exercise of discretion, the negligent failure to act will not subject the public official to liability unless the duty to act is clear and unequivocal. . . . We have recognized the existence of such duty in situations where it would be apparent to the public officer that his failure to act would be likely to subject an identifiable person to imminent harm.' . . .); *Tryon* v. *North Branford*, 58 Conn. App. 702, 712, 755 A.2d 317 (2000) (imminent harm is 'harm ready to take place within the immediate future')."

[10] See, e.g., The American Heritage Dictionary of the English Language (1992) (defining "imminent" to mean "[a]bout to occur; impending"); Merriam-Webster's Collegiate Dictionary (10th Ed. 1995) (defining "imminent" as "ready to take place; esp[ecially]: hanging threateningly over one's head").

[11] The court in *Burns* noted that "[o]ther courts, in carving out . . . excep-

tions to their respective doctrines of governmental immunity, have . . . considered . . . the duration of the threat of injury; [*Irwin* v. *Ware*, 392 Mass. 745, 756, 467 N.E.2d 1292 (1984)] . . . ." (Citations omitted.) *Burns* v. *Board of Education*, supra, 228 Conn. 647. *Irwin*, however, did not involve the imminent harm to identifiable persons exception to governmental immunity. Rather, that case involved the "special relationship" exception to the public duty doctrine. *Irwin* v. *Ware*, supra, 762.

[12] There is no suggestion in *Burns* or its progeny that this court intended or had the authority to exercise its common-law authority to modify the class of harms that would be deemed imminent for purposes of the imminent harm to identifiable persons exception as applied to cases involving injuries suffered by children while attending a public school. To the contrary, "[s]ince the codification of the common law under § 52-557n, this court has recognized that it is not free to expand or alter the scope of governmental immunity therein." *Durrant* v. *Board of Education*, supra, 284 Conn. 107; id. ("*Burns* . . . implicitly proceeded from the assumption that [§ 52-557n] had codified the common law").

[13] In this regard, if a condition causing a risk of harm is of short duration and the harm actually occurs, this fact, in and of itself, does not conclusively establish a high likelihood of harm, especially if the condition is of a recurring nature, as it was in *Burns* and *Purzycki*. In other words, if an icy patch forms and melts on a school walkway numerous times over the course of the winter, every year, or a group of students walks from the lunchroom to the recess yard once a day, every day, over the course of the school year, and does so every year, the fact that, during the existence of one of those temporary conditions, an injury occurred, does not necessarily imply that the harm was imminent. Indeed, a reasonable juror could conclude that the fact that thousands of students had walked on the icy walkway and from the lunchroom to the recess yard over the course of the years without being injured supports the conclusion that the harm was not imminent.

[14] See also *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 275, 41 A.3d 1147 (2012) (when plaintiffs alleged that municipal defendants' failure to properly maintain roads and drainage systems in neighborhood resulted in repeated flooding of their property during periods of heavy rainfall over period of years, risk of harm was not imminent because it was not "temporary and of short duration" under *Purzycki*, but could occur "at any time in the future, or not at all" under *Evon*); *Doe* v. *Board of Education*, 76 Conn. App. 296, 305, 819 A.2d 289 (2003) (when plaintiff, who was twelve year old student, alleged that she was sexually assaulted by three other students in vacant classroom, risk of harm was not imminent because, unlike in *Burns* and *Purzycki*, "the alleged danger . . . was not limited to a particular area of the school and a particular time period"). In both of these cases, instead of holding that the harm was not imminent because it was not temporally or geographically limited, it would have made more sense to hold that the risk of harm was not imminent because it was not apparent to the municipal defendant that the risk of harm was so great that the defendant's duty to act immediately to prevent the harm was clear and unequivocal. See *Bonington* v. *Westport*, supra, 297 Conn. 315 (when plaintiffs alleged that municipal defendant's failure to enforce zoning violations had resulted in flooding of their property, harm was not imminent because, although "rainfall inevitably would occur at that site at some point in the future, a significant rainfall causing excessive surface runoff necessarily would occur at an indefinite point in time").

[15] For example, the risk of injury from an unprotected buzz saw in a classroom occupied by roughhousing fifteen year old children would clearly be imminent.

Justice Eveleigh disagrees with the imminent harm standard that we have adopted and contends that the standard should be "whether it was, *or should have been*, apparent to the municipal defendant that the dangerous condition was so likely to cause harm in the near future that the defendant had a clear and unequivocal duty to act to prevent the harm." (Emphasis added.) Thus, he appears to contend that the imminent harm to identifiable persons exception should apply not only when it was actually apparent to the municipal defendant that an identifiable person was subject to imminent harm, but also when the municipal defendant was *not* aware of the danger, but reasonably should have been. The question of whether the imminent harm to identifiable persons standard should be subjective or objective has not been raised, however, in the present case. In other words, the plaintiffs make no claim that, if the defendant actually did not know about the broken locker until Vereen was injured, it should still be held liable. Rather, the

plaintiffs presented evidence that the defendant knew about the broken locker because it had been broken for many months and school officials frequently were present in the locker room. Because the question of whether the standard is subjective or objective is not before us, we express no opinion on it. Moreover, it is unclear to us whether, as Justice Eveleigh contends, the outcomes in cases such as *Edgerton* v. *Clinton*, supra, 311 Conn. 217, and *Shore* v. *Stonington*, supra, 187 Conn. 147, would have been different if this court had applied an objective standard and, if so, why, questions that we also need not resolve here.

[16] The plaintiffs contend that, when a case involves children in a school setting, there is no requirement that the harm be so likely to occur that the duty to act is clear and unequivocal because, under *Burns*, schoolchildren are identifiable victims as a matter of law, and this circumstance satisfies, at least partially, the requirement that the duty to act be clear and unequivocal. In addition, they contend that *Burns* stands for the proposition that, "[i]n school cases, children sometimes get hurt in nonurgent situations, but the degree of control over the children and the fact that the state takes away children from their parents who have a right to protect [them], means that the governmental authorities should be liable for more." Thus, the plaintiffs effectively contend that *Burns* did not really involve the "identifiable persons subject to *imminent harm*" exception to governmental immunity, but recognized an exception for harms to schoolchildren that are *foreseeable*. (Emphasis added.) We disagree. This court in *Burns* stated expressly that "[t]he only exception to the qualified immunity of a municipal employee for discretionary acts that is of relevance to the present case is the exception permitting a tort action in circumstances of perceptible imminent harm to an identifiable person." *Burns* v. *Board of Education*, supra, 228 Conn. 645–46. To the extent that this court in *Burns* adopted a special rule for schoolchildren, that rule was limited to the "identifiable person" prong of the exception. See id., 649 ("the superintendent of schools bears the responsibility for failing to act to prevent the risk of imminent harm to [schoolchildren] *as an identifiable class of beneficiaries* of his statutory duty of care" [emphasis added]). In attempting to determine the meaning of the "imminent harm" prong, the court relied on this court's statement in *Evon* v. *Andrews*, supra, 221 Conn. 508, that a harm is not imminent if it can occur "at any future time or not at all," thereby recognizing that the ordinary imminent harm standard applied. We further note that, the "temporary risk" standard that this court adopted in *Burns* has not been interpreted as being limited to cases involving children in a school setting. See *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 275, 41 A.3d 1147 (2012). As we have explained, this court's statement in *Evon* means that a harm is imminent if the risk of harm is very high, not that a harm is imminent if the condition causing the risk of harm is temporary. Because the court in *Burns* misinterpreted *Evon*, we conclude that *Burns* must be overruled.

We recognize that, in *Murdock* v. *Croughwell*, 268 Conn. 559, 574, 848 A.2d 363 (2004), this court suggested that the defendant was held liable in *Purzycki*, which relied on *Burns*, because of "the special relationship between a school board and the minor students under its care." In *Murdock*, the plaintiff, an officer with the Hartford Police Department, claimed that his supervisor, the Hartford Chief of Police, was liable for injuries that he suffered in a fight with another Hartford police officer while off duty, and the city of Hartford was vicariously liable for those injuries. Id., 560–61. In support of this claim, he relied on § 315 (a) of the Restatement (Second) of Torts, which provides that a person has "no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct . . . ." (Internal quotation marks omitted.) *Murdock* v. *Croughwell*, supra, 567–68. The defendant contended that this principle was embodied in this court's decision in *Purzycki* v. *Fairfield*, supra, 244 Conn. 111, holding that school officials were not immune from liability to a child injured in an unsupervised school hallway. *Murdock* v. *Croughwell*, supra, 572. This court concluded in *Murdock* that *Purzycki* was distinguishable because: (1) "children outside the supervision of their parents require special protection"; id.; and (2) *Purzycki* "involved the special relationship between a school board and the minor students under its care." Id., 574. We now clarify that, although, loosely speaking, this court's decision in *Burns*, on which *Purzycki* relied, may be characterized as recognizing a "special relationship" between school officials and schoolchildren to the extent that it held that, in a school

setting, children are deemed identifiable victims as a matter of law, *Burns* and *Purzycki* did not hold that schoolchildren fall into the "special relation-ship" exception to the common-law rule that there is no duty to protect a person from the negligent conduct of a third person. See footnote 11 of this opinion. Rather, as we have explained, *Burns* and *Purzycki* merely held that, for purposes of abrogating governmental immunity, children in a school setting are automatically deemed to be identifiable victims when they are subject to *imminent harm*.

[17] Although evidence that the locker had been in a dangerous condition for a significant length of time could support a finding that the condition did not constitute a risk of imminent harm; see footnote 13 of this opinion; it would not *compel* such a finding. The jury reasonably could conclude that the fact that an injury had not previously occurred was simply a matter of luck, especially if students were exposed to the danger only for brief periods during the school day.

[18] Justice Eveleigh states that we have concluded that, "even though there is no claim that the [defendant] . . . [was] aware that, from 9:06 to 9:11 a.m. [Vereen] was being subjected to imminent harm, such risk should have been apparent to [it]." This characterization of our holding is incorrect. First, we have not determined that the defendant was or should have been aware of any imminent harm to Vereen, but have concluded only that the evidence was sufficient for *a reasonable juror* to find that the defendant was aware that Vereen was subject to imminent harm. Second, Justice Eveleigh seems to suggest that an objective standard is somehow implicit in our conclusion that a reasonable juror could find that the defendant was aware that Vereen was exposed to imminent harm. See footnote 15 of this opinion. We disagree. As we have explained, the plaintiffs can prevail if they prove that the defendant was aware of a condition that created such a high risk of harm to students that the defendant's duty to correct the condition was clear and unequivocal. Under *Burns*, the plaintiffs do not have to prove that the defendant was aware that there was a risk to *Vereen* for the imminent harm exception to apply. *Burns* v. *Board of Education*, supra, 228 Conn. 649 ("the superintendent of schools bears the responsibility for failing to act to prevent the risk of imminent harm to [schoolchildren] as an identifiable class of beneficiaries of his statutory duty of care"). In other words, when a condition in a school creates a risk of imminent harm, all students are deemed to be identifiable persons subject to the risk under *Burns*.

Finally, we disagree with Justice Eveleigh's contention that there is no difference between an unprotected buzz saw and the sharp edge of a broken locker for purposes of an imminent harm analysis. No reasonable person could fail to conclude that sending children into a room containing an unprotected, operating buzz saw poses such a high risk of injury that the municipal defendant had a clear and unequivocal duty to act immediately to prevent the harm by removing the buzz saw or keeping children away from it. In contrast, a reasonable person might conclude that sending children into a room containing a broken locker with a jagged edge does not pose such a risk.

[19] The plaintiffs raised a slightly different claim on appeal to the Appellate Court. In that appeal, they claimed that, by failing to ask for a jury instruction on governmental immunity, the defendant had waived that defense. *Haynes* v. *Middletown*, supra, 142 Conn. App. 731. The Appellate Court rejected that claim; id., 734; and the plaintiffs have not challenged that ruling in this appeal.

[20] The trial court rejected this claim, and the defendant does not challenge the court's ruling on appeal. See *Grady* v. *Somers*, 294 Conn. 324, 349, 984 A.2d 684 (2009) ("the identifiable person, imminent harm exception to employees' qualified immunity applies to the immunity afforded to munici-palities for the negligent performance of discretionary acts").

[21] We emphasize that we do not suggest that the trial court cannot defer ruling on a motion for a directed verdict until after the jury has returned its verdict. We conclude only that, if the trial court defers its ruling and submits the case to the jury, it should instruct the jury as necessary on the legal issues raised in the motion.

[22] The time to raise such a claim would have been *before* the trial court submitted the case to the jury. Similarly, if the trial court believed before the case was submitted to the jury that the plaintiffs did not intend to pursue the exception because they failed to ask for a jury instruction on it, the court should have indicated *at that time* that there were no issues for the jury to decide because the defendant had established its governmental

immunity defense as a matter of law. If it had done so, the plaintiffs presumably would have immediately asked for an instruction on the exception. In any event, it is clear that the trial court did *not* believe that the plaintiffs had waived the exception because, if it had, there would have been no need for the court to address the merits of the defendant's motion for a directed verdict and its motion to set aside the verdict and to render judgment for the defendant.

---